UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDY S., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 23 CV 5872 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Randy S. appeals from the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse and remand [14] is granted, the Commissioner's motion for summary judgment [16] is denied, and the case is remanded for further administrative proceedings.[1]

**Background**

In February 2020, plaintiff applied for a period of disability and disability insurance benefits with an amended onset date of February 15, 2019. [5-1] 23. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 23-38, 93-101, 102-26. The Appeals Council denied review in June 2023, *see* [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. [5-1] 25. At step two, the ALJ determined that plaintiff had the following severe impairments: osteoarthritis and history of major joint dysfunction of the knees

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [5-1], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [9].

and ankles. [*Id.*] 28-29. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 20-25. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff (1) could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; (2) could frequently stoop; (3) could occasionally kneel, crouch, and crawl; (4) could frequently use his bilateral upper extremities; (5) should avoid concentrated exposure to vibration, extreme cold, unprotected heights, and moving mechanical parts; and (6) should avoid working on uneven terrain/ground. [*Id.*] 29-37. At step four, the ALJ held that plaintiff could perform his past relevant work as a pellet-mill operator. [*Id.*] 37. Accordingly, the ALJ concluded that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed and the case remanded because the ALJ (1) erred at step two by finding that his back pain was not a medically determinable impairment, (2) erred in weighing the opinions of his chiropractor and family nurse practitioner, (3) crafted an RFC determination that is not supported by substantial evidence, (4) patently erred in discrediting his subjective symptom allegations, and (5) failed to explain what weight she gave to the testimony of plaintiff's son. The Court agrees that the ALJ erred in weighing the opinion of plaintiff's treating chiropractor and that this error requires a remand. The Court also agrees that the ALJ erred in finding that plaintiff's back pain was not a medically determinable impairment and that the error was not harmless.[3]

---

[3] Because these issues are dispositive, the Court need not address plaintiff's other grounds for a remand.

A.  **Opinion Evidence**

Plaintiff contends that substantial evidence does not support the ALJ's decision that an opinion statement from his chiropractor was unpersuasive. *See* [14] 9-11.

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or administrative finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id*. "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id*. "In considering the supportability and consistency of a medical opinion," the ALJ "need only minimally articulate[ ] her reasoning for the persuasiveness of the medical opinion." *Lisa L. v. O'Malley*, No. 20-CV-50395, 2024 WL 1013977, at *2 (N.D. Ill. Mar. 8, 2024).

Dr. Gibbs provided plaintiff with episodic chiropractic care from September 1999 through February 2022. [5-1] 669-72. According to Gibbs's opinion statement, plaintiff (1) could walk only two blocks without needing to rest or experiencing severe pain; (2) could stand and walk for only two hours during an eight-hour workday; (3) needed a job that permitted shifting positions at will from sitting, standing, or walking; (4) needed to walk around every 90 minutes for at least five minutes; (5) would need at least three or four unscheduled breaks during the day due to muscle weakness, pain, and adverse effects of medication; (6) needed to use a cane or other hand-held assistive device; and (7) had significant limitations with reaching, handling, and fingering. [*Id.*] 670-71. In support of his opinion, Dr. Gibbs identified the following clinical findings and objective signs: episodic swelling in the lower back, hands, and left knee; an altered gait; and the results of straight leg raise and well leg raise testing. [*Id.*] 669.

The ALJ determined that Dr. Gibbs's opinion was "not persuasive" because it was "inconsistent with and not supported by the medical evidence in the record, including relatively unremarkable physical examinations during the period at issue." [5-1] 36. In support, the ALJ focused primarily on plaintiff's September 2020 consultative examination, where the examiner, Dr. Yalamanchili found "no limitations of motion of any spinal segment and no anatomic abnormality of the cervical, thoracic, or lumbar spine." [*Id.*] 36. The ALJ also noted Yalamanchili's findings that plaintiff displayed normal muscle and grip strength, his gait was

3

normal, and he did not require a cane. [*Id.*]. The ALJ observed that Dr. Yalamanchili found no limitations of motion in the upper and lower extremities, but also acknowledged that plaintiff had difficulty getting on and off the exam table, straight leg raise testing was impaired because of low back pain and an enlarged abdomen, plaintiff could not hop on one leg and needed to hold onto the wall, and he walked on his heels with moderate difficulty. [*Id.*] 31-32, 36. In further support of her weighing of Dr. Gibbs's opinion, the ALJ also pointed to the "essentially unremarkable" examinations performed by plaintiff's primary care provider, Dr. Brauweiler, who documented "normal gait and range of motion." [5-1] 37. The treatment notes cited by the ALJ reflected that (1) plaintiff was trying to stay physically active by working out on a stationary bike and with bands, *see* [*id.*] 513 (April 28, 2020, treatment note); (2) plaintiff visited Dr. Brauweiler on August 31, 2020, to have his disability paperwork filled out and no significant findings were made respecting his shoulder and knee issues, *see* [*id.*] 550 (August 31, 2020, treatment note); and (3) plaintiff reported that it was hard to stay active due to chronic back pain, he could not walk much, and he was taking pain medication with minimal benefit, but Dr. Brauweiler observed no spinal tenderness or spasms, plaintiff's gait and range of motion were normal, and a straight leg raise test was negative, *see* [*id.*] 573 (November 6, 2020).

Substantial evidence does not support the ALJ's decision to discount Dr. Gibbs's opinion on the ground that it was "inconsistent with and not supported by the medical evidence in the record," which, in the ALJ's view, was characterized primarily by "relatively unremarkable physical examinations." [5-1] 36. Had the medical record consisted only of the results of the consultative exam and the treatment notes cited by the ALJ–or even additional treatment notes reflecting similar findings–then the Court would have little trouble in concluding that substantial evidence supported the ALJ's decision. But the record here contained more–and arguably more significant– evidence that supported Dr. Gibbs's opinion, and the ALJ simply did not address most of it.

Most importantly, the ALJ largely ignored Dr. Gibbs's own treatment records, which contain significant objective findings about plaintiff's spinal condition and knee problems that appear to support his opinions. In a March 3, 2020, treatment note, Dr. Gibbs recorded that plaintiff rated his lower back pain at 8 out of 10 and complained of constant aching" and "sharp, shooting low back pain" that was mildly improved over his last visit. [5-1] 504. Plaintiff also reported level 8 pain with constant aching in the sacroiliac joint area and level 6 stiffness in the midback and at both trapezii. [*Id.*]. In the "Objective Findings" section of the note, Gibbs noted "[p]alpation showed a degree of aberrant motion on the right affecting vertebral segments C4, C6, T3, T5, and T8. Motion palpation indicated a degree of reduced mobility on the right affecting levels L1, L3, L5, and RSI. Muscle hypertonicity was

4

revealed bilaterally in muscle hypertonicity. Palpation showed both knees to be subluxated with fixation at the joint." [*Id.*].[4] The ALJ did not discuss this note.

On July 14, 2021, plaintiff saw Dr. Gibbs again, shortly after Dr. Brauweiler diagnosed him with lumbago with sciatica.[5] Plaintiff reported low back pain extending down his left leg that he rated 8 out of 10. [5-1] 620. Plaintiff also reported severe pain with constant aching and shooting from midline to left in the sacroiliac joint area. [*Id.*]. In the "Objective Findings" section of this treatment note, Dr. Gibbs observed that five cervical and thoracic vertebral levels were subluxated on the right with fixation at the joint, three lumbar segments were subluxated on the right with joint fixation, muscle hypertonicity bilaterally, and restricted functioning in both knees. [*Id.*]. The ALJ did not discuss this note, either.

On July 31, 2021, plaintiff returned to Dr. Gibbs, who again documented plaintiff's back pain (this time rated 5 out of 10) and observed subluxation of the lumbar, cervical, and thoracic spine. [5-1] 665. The ALJ discussed this note, but only to recount that plaintiff "was feeling better" and "still had low back pain that extended into the left leg." [*Id.*] 32. She did not refer to any of Dr. Gibbs's objective findings. [*Id.*].

At his January 29, 2022, appointment with Dr. Gibbs, plaintiff reported that he continued to have pain in the left side and in the left gluteal region, had "chronic left knee pain that sometimes gives out on him, and "has been doing stuff around the house but has pain and difficulty from time to time." [5-1] 667. Plaintiff reported that his low back pain was at level 6 out of 10 and "slightly worse since his last treatment." [*Id.*]. Plaintiff also reported worse stiffness in his mid-back, 5 out of 10 stiffness in both trapezii, constant aching and dull throbbing pain deep to the kneecaps of both knees, and shooting pain in the sacroiliac joint. [*Id.*]. Dr. Gibbs again observed subluxation of multiple vertebral segments that caused "restriction of joint function," "subluxation . . . at both knees with restriction of the joint," and subluxation at LS1 on the left "with a degree of restricted mobility." [*Id.*]. The ALJ discussed this note, but merely summarized plaintiff's subjective complaints and highlighted plaintiff's "acknowledge[ment]" that "he has been performing tasks around the house[.]" [*Id.*].

Given the ALJ's failure to engage with Dr. Gibbs's treatment notes, there is no substantial evidentiary basis to uphold the ALJ's conclusion that Gibbs's opinion was unsupported by the medical record. Indeed, the failure to consider whether a provider's own treatment notes support the provider's opinion can be a "glaring error" that requires a remand. *See Steven R. v. Bisignano*, No. 23 CV 59, 2025 WL 1795256, at *3 (N.D. Ill. June 30, 2025) (remanding where ALJ did not "consider the degree to

---

[4] Subluxation means "an incomplete or partial dislocation." *Rogalska v. Berryhill*, No. 15 C 5430, 2017 WL 1178515, at *2 (N.D. Ill. Mar. 30, 2017).
[5] As discussed below, Dr. Brauweiler's diagnosis is only one piece of evidence that undermines the ALJ's decision that plaintiff's back pain was not a medically determinable impairment.

5

which Dr. Imlach's own treatment notes supported his opinion"); *Brandon P. v. Bisignano*, No. 23 CV 52, 2025 WL 1677806, at *3 (N.D. Ill. June 13, 2025) (remanding where ALJ's rejected provider's opinion but "never addressed if or how his consideration of the other objective medical evidence–namely, the copious treatment notes from [provider] in the record–led him to discount [provider's] opinion as unsupported" and characterizing this as "a glaring error"); *Charlnette R. v. Dudek*, No. 23-CV-03184, 2025 WL 933840, at *5 (N.D. Ill. Mar. 27, 2025) (holding that ALJ's supportability analysis warranted remand where ALJ did not consider whether provider's treatment notes supported his opinion).

The Court recognizes that the ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. But the ALJ's failure to engage with Dr. Gibbs's treatment notes, which contain objective evidence reflecting that plaintiff's spine was partially dislocated at several vertebral levels and that plaintiff also experienced subluxation in his knees, means that the Court cannot "assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* (internal quotation marks and brackets omitted); *see also Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) ("[T]he ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.") (internal quotation marks and citation omitted). When Dr. Gibbs's notes are considered with the other medical evidence in the record, it is clear that the "medical findings are a mixed bag, containing both normal and abnormal findings." *Weyland v. Saul*, 19-CV-1531, 2020 WL 5876062, at *5 (E.D. Wis. Oct. 2, 2020). But the ALJ's conclusory statement that the record was characterized by "relatively unremarkable" and "essentially unremarkable" findings, [5-1] 35, 37, does not permit the Court to assess (1) whether she even considered Dr. Gibbs's treatment notes, (2) whether (and why) she considered Gibbs's findings to be unremarkable, (3) how she concluded that his opinion was unsupported despite the substance of those notes, or (4) why she apparently gave greater weight to the "unremarkable" findings reflected in Dr. Brauweiler's notes and parts of the consultative exam than to Gibbs's notes. *See Rebecca M.B. v. Kijakazi*, No. 22 C 41, 2023 WL 3168894, at *4 (N.D. Ill. Apr. 28, 2023) ("While the Court reads the ALJ's opinion as a whole, and ALJs need only minimally articulate their analysis, it does not mean that ALJs can recite the cold medical record upfront, and then make conclusions without analysis later in the opinion examinations.").

For these reasons, the Court holds that the ALJ erred in weighing Dr. Gibbs's opinion.[6]

---

[6] The Commissioner does not dispute plaintiff's argument that this error was harmful. *See* [14] 12 (arguing that adopting Dr. Gibbs's opinion would have resulted in a finding that plaintiff was disabled); [17] 7 (arguing only that ALJ properly weighed Gibbs's opinion). Any

6

### B. Step Two Determination

Plaintiff also argues that the ALJ erred at step two when she concluded that plaintiff's lumbago with sciatica was not a medically determinable impairment. [14] 7-9. The Court agrees.

At step two of the sequential analysis, the ALJ must determine "whether the claimant in fact has an impairment or combination of impairments that is 'severe.'" *Frank R. v. Kijakazi*, No. 19 CV 3223, 2021 WL 4264386, at *6 (N.D. Ill. Sept. 20, 2021). "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Id.* "The Step 2 determination is a de minimis screening for groundless claims intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (internal quotation marks omitted).

In this case, the ALJ found that plaintiff had two severe impairments–osteoarthritis and a history of major joint dysfunction in the knees and ankles–and continued with the sequential analysis. But the ALJ's determination that plaintiff's lumbago with sciatica was not a medically determinable impairment rested on a clear mistake of fact. Referring to plaintiff's back pain, the ALJ stated that "there is no documentation of any diagnosis associated with these symptoms." [5-1] 28. But Dr. Brauweiler diagnosed plaintiff with "Lumbago with sciatica, left side," in July 2021. [*Id.*] 618-19. In addition, the consultative examiner, Dr. Yalamanchili, diagnosed plaintiff with low back pain. *See* [*id.*] 558. Dr. Gibbs also diagnosed plaintiff with lumbago. [*Id.*] 669. Finally, plaintiff's treating nurse practitioner, Nurse Seplak, also noted plaintiff had been diagnosed with lumbago with sciatica. [*Id.*] 634. Thus, the ALJ's determination that plaintiff's back pain was not medically determinable was erroneous.

"[A]ny error in characterizing an impairment as 'non-severe' is harmless if the ALJ finds at least one severe impairment and considers the aggregate effect of all impairments when formulating the RFC." *Mario G. v. O'Malley*, No. 21 CV 472, 2024 WL 916234, at *2 (N.D. Ill. Mar. 4, 2024). Here, however, the Court cannot be sure that the ALJ aggregated the effects of plaintiff's lumbago with his other severe impairments. To be sure, the ALJ considered plaintiff's *subjective* allegations regarding his back pain. *See* [5-1] 29 (referring to plaintiff's testimony that "he is unable to work due to pain in his back"); [*id.*] 33 (stating that plaintiff's "complaints of pain in his back . . . were considered in reducing him to light work with additional postural limitations"). As discussed above, however, the ALJ did not engage with the significant treatment record generated by Dr. Gibbs, who repeatedly documented

---

argument that the ALJ's error was harmless has thus been forfeited. *Jennifer W. v. O'Malley*, No. 21 CV 1805, 2024 WL 4111870, at *2 n.4 (N.D. Ill. Sept. 6, 2024).

7

objective findings relating to plaintiff's back pain and sciatica. The ALJ also overlooked that multiple medical sources diagnosed plaintiff with lumbago or back pain. In these circumstances, the Court has significant doubts as to whether the ALJ aggregated the effects of all plaintiff's impairments (or minimized plaintiff's complaints of back pain due to her mistaken impression that the back pain was not a medically determinable impairment).

## Conclusion

Plaintiff's motion to reverse and remand [14] is granted and the Commissioner's motion for summary judgment [16] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: January 13, 2026**